**F I L E D**
CLERK, U.S. DISTRICT COURT

06/25/2024

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ IGU _____ DEPUTY

E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JEFF MITCHELL (Cal. Bar No. 236225)
Assistant United States Attorney
Major Frauds Section
RACHEL N. AGRESS (Cal. Bar No. 281703)
Special Assistant United States Attorney
DAN G. BOYLE (Cal. Bar No. 332518)
Assistant United States Attorney
Environmental Crimes and
 Consumer Protection Section
     1100/1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0698/0487/2426
     Facsimile: (213) 894-6269
     E-mail:    jeff.mitchell@usdoj.gov
                rachel.agress@usdoj.gov
                daniel.boyle2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 8:24-cr-00080-HDV |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT MATHEW R. BOWYER |
| v. | |
| MATHEW R. BOWYER, | |
| Defendant. | |

1.   Subject to the approval of the Department of Justice, Tax Division, this constitutes the plea agreement between MATHEW R. BOWYER ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the investigation of defendant's conduct described in the agreed-to factual basis set forth in Attachment A to this agreement.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or

foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.    Defendant agrees to:

a.    Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a three-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with Operating an Unlawful Gambling Business, in violation of 18 U.S.C. § 1955; Transactional Money Laundering in violation of 18 U.S.C. § 1957; and Subscribing to a False Tax Return, in violation of 26 U.S.C. § 7206(1).

b.    Not contest facts agreed to in this agreement.

c.    Abide by all agreements regarding sentencing contained in this agreement.

d.    Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.    Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.    Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.    Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.   Defendant agrees that any and all criminal debt obligations ordered by the Court will be due as ordered by the Court. The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

i.   Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

3.   Defendant further agrees:

a.   To forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of the illegal activity charged in Count One of the information to which defendant is pleading guilty, specifically including, but not limited to, the following (collectively, the "Forfeitable Assets"):

i.   $257,923 in U.S. currency seized on or about October 5, 2023 from defendant's residence; and

ii.   Casino chips with a value of approximately $14,830, seized on or about October 5, 2023 from defendant's residence.

3

b.   To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Assets and to the forfeiture of the assets.

c.   To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Assets, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d.   Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Assets.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Assets on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Assets.

e.   Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Assets.

f.   Not to claim that reasonable cause to seize the Forfeitable Assets was lacking.

g.   To prevent the transfer, sale, destruction, or loss of any and all assets described above to the extent defendant has the ability to do so.

h.   That forfeiture of Forfeitable Assets shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

i.   With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives: (1) the requirements

4

of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other means); and (3) all constitutional, legal, and equitable defenses to the forfeiture of the Forfeitable Assets in any proceeding on any grounds including, without limitation, that the forfeiture constitutes an excessive fine or punishment.  Defendant acknowledges that forfeiture of the Forfeitable Assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty pleas.

4.   Defendant admits that defendant received $4,030,938 of unreported income for calendar year 2022.  Defendant agrees that:

a.   Defendant will make his best efforts to pay to the Fiscal Clerk of the Court at or before sentencing all additional taxes assessed by the Internal Revenue Service  pursuant to the closing agreement referred to in Paragraph 4(f) and will make his best efforts to promptly pay to the Fiscal Clerk of the Court all additional taxes thereafter determined by the IRS to be owing as a result of any computational error. Payments may be made to the Clerk, United States District Court, Fiscal Department, 255 East Temple Street, Room 1178, Los Angeles, California 90012.

b.   If defendant files any amended return for tax year 2022, nothing in this agreement forecloses or limits the ability of

1  the Internal Revenue Service to examine and make adjustments to

2  defendant's return after filing.

3         c.    Defendant is liable for the fraud penalty imposed by

4  the Internal Revenue Code, 26 U.S.C. § 6663, on the understatements

5  of tax liability for 2022.

6         d.    Defendant gives up any and all objections that could

7  be asserted to the Examination Division of the Internal Revenue

8  Service receiving materials or information obtained during the

9  criminal investigation of this matter, including materials and

10 information obtained through grand jury subpoenas.

11        e.    Defendant will sign closing agreements as requested by

12 the Internal Revenue Service, permitting the Internal Revenue Service

13 to assess and collect the total sum of $1,613,280, which comprises

14 the tax liabilities, as well as assess and collect the civil fraud

15 penalty for each year and statutory interest, on the tax liabilities,

16 as provided by law.

17        f.    Authorize the USAO to obtain a credit report upon

18 returning a signed copy of this plea agreement.

19        g.    Consent to the USAO inspecting and copying all of

20 defendant's financial documents and financial information held by the

21 United States Probation and Pretrial Services Office.

22        h.    Agree to and not oppose the imposition of the

23 following conditions of probation or supervised release:  The

24 defendant shall submit defendant's person and any property under

25 defendant's control, including any residence, vehicle, papers,

26 computer and other electronic communication or data storage devices

27 and media, and effects, to suspicion-less search and seizure at any

28 time of the day or night by any law enforcement or probation officer,

                                    6

1   with or without a warrant, and with or without cause; and if stopped

2   or questioned by a law enforcement officer for any reason, defendant

3   shall notify that officer that defendant is on probation or federal

4   supervised release and subject to search.

5       5.   Defendant further agrees to cooperate fully with the USAO,

6   the Department of Homeland Security, Homeland Security

7   Investigations, and the Internal Revenue Service Criminal

8   Investigation Division, and, as directed by the USAO, any other

9   federal, state, local, or foreign prosecuting, enforcement,

10  administrative, or regulatory authority.  This cooperation requires

11  defendant to:

12          a.   Respond truthfully and completely to all questions

13  that may be put to defendant, whether in interviews, before a grand

14  jury, or at any trial or other court proceeding.

15          b.   Attend all meetings, grand jury sessions, trials or

16  other proceedings at which defendant's presence is requested by the

17  USAO or compelled by subpoena or court order.

18          c.   Produce voluntarily all documents, records, or other

19  tangible evidence relating to matters about which the USAO, or its

20  designee, inquires.

21      6.   For purposes of this agreement: (1) "Cooperation

22  Information" shall mean any statements made, or documents, records,

23  tangible evidence, or other information provided, by defendant

24  pursuant to defendant's cooperation under this agreement or pursuant

25  to the letter agreements previously entered into by the parties dated

26  on or about November 20, 2023, January 16, 2024, and April 17, 2024

27  (the "Letter Agreements"); and (2) "Plea Information" shall mean any

28

statements made by defendant, under oath, at the guilty plea hearing and the agreed to factual basis statement in this agreement.

THE USAO'S OBLIGATIONS

7.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

d.   Not further criminally prosecute defendant for violations of 18 U.S.C. §§ 1955 ,1956, 1957 arising out of defendant's conduct described in the agreed-to factual basis set forth in Attachment A.  Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement. Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

e.   Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court

to determine that range is 21 or higher and provided that the Court does not depart downward in offense level or criminal history category.  For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

<u>DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION</u>

8.   Defendant understands the following:

a.   Any knowingly false or misleading statement by defendant will subject defendant to prosecution for false statement, obstruction of justice, and perjury and will constitute a breach by defendant of this agreement.

b.   Nothing in this agreement requires the USAO or any other prosecuting, enforcement, administrative, or regulatory authority to accept any cooperation or assistance that defendant may offer, or to use it in any particular way.

c.   Defendant cannot withdraw defendant's guilty pleas if the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1 for a reduced guideline range or if the USAO makes such a motion and the Court does not grant it or if the Court grants such a USAO motion but elects to sentence above the reduced range.

d.   At this time the USAO makes no agreement or representation as to whether any cooperation that defendant has provided or intends to provide constitutes or will constitute substantial assistance.  The decision whether defendant has provided substantial assistance will rest solely within the exclusive judgment of the USAO.

e.   The USAO's determination whether defendant has provided substantial assistance will not depend in any way on whether

1  the government prevails at any trial or court hearing in which

2  defendant testifies or in which the government otherwise presents

3  information resulting from defendant's cooperation.

4                          NATURE OF THE OFFENSES

5      9.   Defendant understands that for defendant to be guilty of

6  the crime charged in Count One of the information, Operating an

7  Unlawful Gambling Business, in violation of Title 18, United States

8  Code, Section 1955, the following must be true:

9           a.   Defendant conducted a business consisting of unlawful

10  sports gambling;

11          b.   Sports gambling was illegal in the State in which

12  defendant conducted the business, namely, California;

13          c.   The business involved five or more persons who

14  conducted all or part of the business; and

15          d.   The business had been in substantially continuous

16  operation by five or more persons for more than thirty days, or had a

17  gross revenue of more than $2,000 in any single day.

18     10.  Defendant understands that for a defendant to be guilty of

19  the crime charged in Count Two of the information, Money Laundering,

20  in violation of Title 18, United States Code, Section 1957, the

21  following must be true:

22          a.   Defendant knowingly engaged or attempted to engage in

23  a monetary transaction;

24          b.   Defendant knew the transaction involved criminally

25  derived property;

26          c.   Such property had a value greater than $10,000;

27          d.   Such property was, in fact, derived from one or more

28  violations of 18 U.S.C. § 1955; and

e.    The transaction occurred in the United States.

11.  Defendant understands that for defendant to be guilty of the crime charged in Count Three, that is, Subscribing to a False Tax Return, in violation of Title 26, United States Code, Section 7206(1), the following must be true:

a.    Defendant signed and filed a tax return for the year 2022 that he knew contained false information as to a material matter;

b.    The return contained a written declaration that it was being signed subject to the penalties of perjury; and

c.    In filing the false tax return, the defendant acted willfully.

12.  In order to prove the defendant acted "willfully," the government must prove beyond a reasonable doubt that the defendant knew federal tax law imposed a duty on him and the defendant intentionally and voluntarily violated that duty.  A matter is "material" if it has a natural tendency to influence, or is capable of influencing, the decisions or activities of the Internal Revenue Service.

<u>PENALTIES AND RESTITUTION</u>

13.  Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1955, is: five years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

14.  Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States

Code, Section 1957, is: ten years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

15.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 26, United States Code, Section 7206(1), is: three years' imprisonment; a one-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

16.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: eighteen years imprisonment; a three-year period of supervised release; a fine of $750,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $300.

17.   Defendant understands and agrees that as to Count Three, the Court: (a) may order defendant to pay restitution in the form of any additional taxes, interest, and penalties that defendant owes to the United States based upon Count Three and any relevant conduct, including unpaid taxes of $1,613,280 for tax year 2022; and (b) must order defendant to pay the costs of prosecution, which may be in addition to the statutory maximum fine stated above.

18.   The Court will also order forfeiture of the property listed in the forfeiture notice in the information.

19.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that

if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

20.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

21.   Defendant understands that, if defendant is not a United States citizen, the felony convictions in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The Court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony convictions in this case.  Defendant understands that unexpected

13

immigration consequences will not serve as grounds to withdraw defendant's guilty pleas.

## FACTUAL BASIS

22.   Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided for in Attachment A, attached hereto, and agree that this statement of facts is sufficient to support a plea of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 24, below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

## SENTENCING FACTORS

23.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

24.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

<u>Count One</u>:

Base Offense Level:               12            USSG § 2E3.1(a)(2)

<u>Count Two</u>

Base Offense Level:               12            USSG § 2S1.1(a)(1)

Violation of 18 U.S.C. § 1957     +1            USSG § 2S1.1(b)(2)(A)

<u>Count Three</u>

Base Offense Level:               22       USSG §§ 2T1.1, 2T4.1(I)

Failure to report/correctly
identify unlawful income          +2            USSG § 2T1.1(b)(1)

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

25.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

26.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

27.   Defendant understands that by pleading guilty, defendant gives up the following rights:

      a.   The right to persist in a plea of not guilty.

      b.   The right to a speedy and public trial by jury.

      c.   The right to be represented by counsel – and if necessary have the Court appoint counsel - at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel – and if necessary have the Court appoint counsel – at every other stage of the proceeding.

15

d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

WAIVER OF RETURN OF DIGITAL DATA

28.  Understanding that the government has in its possession digital devices and/or digital media seized from defendant, defendant waives any right to the return of digital data contained on those digital devices and/or digital media and agrees that if any of these digital devices and/or digital media are returned to defendant, the government may delete all digital data from those digital devices and/or digital media before they are returned to defendant.

WAIVER OF APPEAL OF CONVICTION

29.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes,

but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK</u>

30.  Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to an offense level of 21 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $1,613,280; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

31.  Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing

Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statutes and regulations to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

32.   The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 21 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered if that amount is less than $1,613,280.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

33.   Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement, including in particular its obligations regarding the use of Cooperation Information; (b) in any investigation, criminal prosecution, or civil, administrative, or regulatory action, defendant agrees that any Cooperation Information and any evidence derived from any Cooperation Information shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, or any federal rule, that any Cooperation

Information or any evidence derived from any Cooperation Information should be suppressed or is inadmissible; and (c) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

<u>RESULT OF VACATUR, REVERSAL OR SET-ASIDE</u>

34.   Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to resentence defendant on any remaining counts of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty pleas on any remaining counts of conviction, with both the USAO and defendant being released from all their obligations under this agreement, or (c) leave defendant's remaining convictions, sentence, and plea agreement intact.  Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

<u>EFFECTIVE DATE OF AGREEMENT</u>

35.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney. Defendant expressly waives any

argument that this agreement is not binding until accepted by a court.

BREACH OF AGREEMENT

36.   Defendant agrees that if defendant, at any time after the effective date of this agreement, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  For example, if defendant knowingly, in an interview, before a grand jury, or at trial, falsely accuses another person of criminal conduct or falsely minimizes defendant's own role, or the role of another, in criminal conduct, defendant will have breached this agreement.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then:

a.   If defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas.

b.   The USAO will be relieved of all its obligations under this agreement; in particular, the USAO: (i) will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crimes to which defendant has pleaded guilty; (ii) will no longer be bound by any agreements regarding criminal prosecution, and will be free to criminally prosecute defendant for any crime, including charges that the USAO would otherwise have been obligated not to criminally

20

prosecute pursuant to this agreement; and (iii) will no longer be bound by any agreement regarding the use of Cooperation Information and will be free to use any Cooperation Information in any way in any investigation, criminal prosecution, or civil, administrative, or regulatory action.

c. The USAO will be free to criminally prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

d. In any investigation, criminal prosecution, or civil, administrative, or regulatory action: (i) defendant will not assert, and hereby waives and gives up, any claim that any Cooperation Information was obtained in violation of the Fifth Amendment privilege against compelled self-incrimination; and (ii) defendant agrees that any Cooperation Information and any Plea Information, as well as any evidence derived from any Cooperation Information or any Plea Information, shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that any Cooperation Information, any Plea Information, or any evidence derived from any Cooperation Information or any Plea Information should be suppressed or is inadmissible.

37. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

38.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

39.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 24 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed

as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

40.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all of defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

41.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

42.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA

United States Attorney


*Dan Boyle*                                        6.21.24
JEFF MITCHELL                                     Date
DAN G. BOYLE
Assistant United States Attorneys

RACHEL N. AGRESS
Special Assistant United States
Attorney


MATHEW BOWYER                                    5/13/2024
Defendant                                        Date

DIANE BASS                                        5/13/24
Attorney for Defendant                           Date
MATHEW BOWYER

24

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          5/13/2024
MATHEW BOWYER                      Date
Defendant

//

//

//

25

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Mathew Bowyer's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____          5/13/24
DIANE BASS                                 Date
Attorney for Defendant
MATHEW BOWYER

**Attachment A**

**Statement of Facts**

The following Statement of Facts is incorporated by reference as part of the Agreement dated 6.21.2024, between the United States Attorney's Office for the Central District of California (the "USAO") and defendant MATHEW R. BOWYER ("BOWYER"). The USAO and BOWYER agree that the following facts are true and correct.

1. At all times relevant to this Agreement, Casino A operated as a Nevada casino licensed and regulated by the Nevada Gaming Control Board, in Las Vegas, Nevada.

2. Beginning on a date unknown and continuing to on or about October 5, 2023, in Los Angeles and Orange Counties, California and Clark County, Nevada, defendant operated an unlicensed and illegal bookmaking business that took bets for money on the outcome of sporting events from various persons at agreed-upon odds (the "Bowyer Gambling Business").

3. Defendant operated the Bowyer Gambling Business in violation of California Penal Code Section 337(a), which prohibits bookmaking within the state of California. The Bowyer Gambling Business involved more than five persons who conducted or financed all or part of the business. The Bowyer Gambling Business remained in substantially continuous operation by at least five such persons for at least five years and often had gross revenue of well over $2,000 on a single day. The Bowyer Gambling Business had more than 700 bettors at times.

4. Defendant operated the Bowyer Gambling Business out of various locations in Los Angeles and Orange Counties, California,

27

and Clark County, Nevada, and in these locations solicited and
accepted customers for the Bowyer Gambling Business.  Defendant
placed and accepted bets from others for the Bowyer Gambling
Business himself, and also used other persons to place and accept
bets from others for the Bowyer Gambling Business.

5.   Defendant employed agents and sub-agents working for the
Bowyer Gambling Business who were paid a portion of the losses
bettors incurred and paid.  These agents would be responsible for
referring clients, recruiting and maintaining their own bettors,
placing and accepting bets from bettors, demanding and collecting
losses from bettors, and distributing winnings to bettors on
behalf of the Bowyer Gambling Business.  Some agents were
themselves also bettors with the Bowyer Gambling Business.
Defendant would, at times, pay these agents' commissions with
casino chips from Casino A.

6.   Defendant and other agents of the Bowyer Gambling
Business would use multiple websites (the "Betting Websites") and
a call center controlled by a third-party service in order to
create accounts through which the Bowyer Gambling Business's
agents and customers could place and track wagers.  The Betting
Websites were based in Costa Rica.  When defendant or his agents
found a new customer who wanted to place wagers on sporting events
with the Bowyer Gambling Business, defendant, or one of his
agents, contacted the operators of the Betting Websites and
arranged for an account to be set up for the customer.  After the
account was established, defendant and/or his agents advised the
customer of the limits on his or her wagering activity, and
provided the customer with access credentials to the Betting

Websites which would allow California residents and others to place wagers on sporting events over the internet, in violation of California Penal Code Section 337(a).

7.   Defendant and the operators of the Betting Websites would keep track of the wagering activity and win/loss records for customers of the Bowyer Gambling Business.  When a bettor won a bet, defendant or his agents paid the bettor based on the size of the bet and the odds that had been set on the Betting Websites.  When a bettor lost, defendant or his agents collected the amounts due under the terms of the bet.  At other times, defendant would instruct losing bettors to directly pay winning bettors of the Bowyer Gambling Business.

8.   Defendant used numerous bank accounts in his name, and the names of others, to receive and pay illicit proceeds from the Bowyer Gambling Business.  One of these bank accounts was an account at Bank A in the name of one of defendant's associates, with an account number ending in '1911 (the "x1911 Account").  Defendant had login information and access to the x1911 Account, and used the x1911 Account to receive proceeds of the Bowyer Gambling Business, as well as to transfer proceeds of the Bowyer Gambling Business for defendant's own use.  Defendant also directed proceeds of the Bowyer Gambling Business into other bank accounts held by defendant's associates, including but not limited to an account at Bank A with an account number ending in '1530 (the "x1530 Account").

9.   In some instances, defendant recruited casino hosts to be agents of the Bowyer Gambling Business.  This included at least two hosts at Casino A, who referred at least four new potential

bettors to the Bowyer Gambling Business.

10.   At times, defendant operated the Bowyer Gambling Business while gambling in Casino A, both in the Casino A sports book and in private gambling salons at Casino A.  Defendant would adjust credit lines and discuss payments and bets with clients of the Bowyer Gambling Business by phone while gambling in Casino A.  At times, Casino A staff would stop play at a table game while defendant took calls and discussed the Bowyer Gambling Business. At other times, defendant would collect payments of proceeds of the Bowyer Gambling Business while gambling at Casino A, including payments in casino chips or in cash in envelopes or bags. Defendant would bring agents, bettors, and associates of the Bowyer Gambling Business to Casino A with him to gamble as a group, some of which were referred to by Casino A employees as the "Bowyer Group."  In addition, Casino A's sports book would at times reach out to defendant and invite defendant to make large bets, to offset the sports book's risk.

11.   One client of the Bowyer Gambling Business was I.M., who was a translator and de facto manger for a professional baseball player ("Individual A").

12.   Between in or about September 2021 and January 2024, I.M. placed at least 19,000 bets with the Bowyer Gambling Business through one of the Betting Websites.  During this period, I.M. had total winning bets of at least $142,256,769.74, and total losing bets of at least $182,935,206.68, leaving a total net balance of negative $40,678,436.94. On a regular basis during this timeframe, defendant would "bump" I.M., *i.e.*, increase I.M.'s betting limits.

13.   Between February 2022 and January 2024, defendant

directed I.M. make payments of at least $15,000,000 to the x1911 Account, all of which were proceeds of the Bowyer Gambling Business.  Defendant also directed I.M. to pay at least $1,250,000 to the x1530 Account, all of which were proceeds of the Bowyer Gambling Business.  Of these illegal proceeds, defendant transferred or directed the transfer of least $9,339,000 to Casino A, in the form of wire transfers as payment for markers for defendant and his associates.  During this period, defendant lost at least $4,164,299 at Casino A, and one of his associates (the named accountholder for the x1911 Account) lost at least $1,585,960 at Casino A.  Defendant also transferred or directed the transfer of least $9 million from the x1911 Account to at least one other casino in the Southern California area, also to pay for markers or credit lines for defendant and/or his associates.

14.   Individuals B and C were also clients of the Bowyer Gambling Business.  Individual B was a professional baseball player for a Southern California baseball club.  Individual C was a former minor league baseball player.  Individuals B and C were also close friends.  Individual B was assigned account number ending in x734 and placed bets with the Bowyer Gambling Business on basketball, football, and hockey.  Individual C was assigned account number ending in x820 and placed bets with the Bowyer Gambling Business baseball, basketball, football, and hockey, which included bets on baseball games in which Individual B played.

15.   Defendant also admits that defendant knowingly and willfully falsely reported his total taxable income to the Internal

Revenue Service ("IRS") on his tax return for tax year 2022. Defendant admits that defendant knew that he had additional income in the following amounts that defendant knowingly and willfully failed to report on his tax returns:

| Tax Year | Reported Total Income | Unreported Income |
|---|---|---|
| 2022 | $607,897 | $4,030,938 |

16. Specifically, on or about September 26, 2023, in Orange County, California, defendant willfully made and subscribed to a materially false United States Individual Income Tax Return, Form 1040, for tax year 2022, which was filed with the IRS and verified by a written declaration that it was made under the penalties of perjury, which defendant did not believe to be true and correct as to every material matter, in that defendant reported on line 15 that his total taxable income for calendar year 2022 was $607,897, when, in truth and in fact, as defendant then knew, his total taxable income for the year 2022 was at least $4,587,954. Specifically, in 2022, defendant received at least $4,030,938 in income from the unlawful Bowyer Gambling Business, including, but not limited to, approximately $3,800,000 in wire transfers into the x1911 Account, which defendant did not declare.

17. The false information provided by defendant was material in that it affected the IRS's calculation of the amount of income that defendant had received in 2022, and prevented the IRS from verifying the accuracy of the amount of tax claimed to be owed on the return and determining whether additional income tax was owed. Defendant acted willfully. Defendant knew that the law required him to report all income accurately and to pay all income tax that

32

was due and owing.  Defendant voluntarily and intentionally violated those duties.  As a result of the false information defendant provided, defendant owes additional taxes of $1,613,280 for tax year 2022 (before interest and penalties).

**Exhibit A**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>MATHEW R. BOWYER,<br><br>　　　　Defendant. | CR No.<br><br>I N F O R M A T I O N<br><br>[18 U.S.C. § 1955: Operating an Illegal Gambling Business; 18 U.S.C. § 1957: Transactional Money Laundering; 26 U.S.C. § 7206(1): Subscribing to a False Tax Return; 18 U.S.C. § 1955(d), 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The United States Attorney charges:

COUNT ONE

[18 U.S.C. § 1955; 18 U.S.C. § 2(a)]

Beginning on an unknown date and continuing through on or about October 5, 2023, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendant MATHEW R. BOWYER aided, conducted, financed, managed, supervised, directed, and owned an illegal gambling business, specifically, a bookmaking business involving taking bets on the outcomes of sporting events at agreed-upon odds in violation of California Penal Code Section 337a,

which business; involved at least five persons who conducted, financed, managed, supervised, directed, and owned all or part of the business; had been in substantially continuous operation by at least five persons for a period in excess of thirty days; and had gross revenue of more than $2,000 in a single day.

COUNT TWO

[18 U.S.C. § 1957; 18 U.S.C. § 2(a)]

On or about July 31, 2023, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendant BOWYER, knowing that the funds involved represented the proceeds of some form of unlawful activity, engaged in and willfully caused others to engage in a monetary transaction affecting interstate commerce in criminally derived property of a value greater than $10,000, to wit, a wire transfer of $521,000 to a casino in Las Vegas, Nevada, which property, in fact, was derived from specified unlawful activity, namely, operation of an illegal gambling business, committed in violation of Title 18, United States Code, Section 1955, as charged in Count One of this Information.

COUNT THREE

[26 U.S.C. § 7206(1)]

On or about September 26, 2023, in Orange County, within the Central District of California, and elsewhere, defendant MATHEW R. BOWYER, a resident of Orange County, California, willfully made and subscribed to a materially false United States Individual Income Tax Return, Form 1040, for tax year 2022, which was verified by a written declaration that it was made under the penalties of perjury, and which was filed with the Internal Revenue Service, which return defendant did not believe to be true and correct as to every material matter, in that defendant reported, on line 10, that his taxable income for calendar year 2022 was $607,897, when, in truth and in fact, as defendant then knew, his taxable income for the year 2022 was substantially higher than that amount.

FORFEITURE ALLEGATION

[18 U.S.C. § 1955(d) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 1955(d) and Title 28, United States Code, Section 2461(c), in the event of defendant's conviction of the offense set forth in Count One of this information.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) Any property, including money, used in such offense, and any property traceable to such property; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), the defendant, if so convicted, shall forfeit substitute property, if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the

//

//

//

5

jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

E. MARTIN ESTRADA
United States Attorney


MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

MARK A. WILLIAMS
Assistant United States Attorney
Chief, Environmental Crimes and
Consumer Protection Section

RACHEL N. AGRESS
Special Assistant United States
Attorney
International Narcotics, Money
  Laundering, and Racketeering
  Section

JEFF MITCHELL
Assistant United States Attorney
Major Frauds Section

DAN G. BOYLE
Assistant United States Attorney
Environmental Crimes and
Consumer Protection Section

6