Diane C. Bass, SBN 155670
Law Office of Diane C. Bass
A Professional Law Corporation
5440 Trabuco Road
Irvine, California 92620
Telephone: 949-494-7011
Email: diane@dbasslaw.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>                    Plaintiff,<br><br>vs.<br><br>MATHEW BOWYER,<br><br>                    Defendant | Case No.: 8:24-CR-080-JWH<br><br><br>DEFENDANT'S POSITION RE: SENTENCING FACTORS; EXHIBITS<br><br>SENTENCING DATE: AUGUST 29, 2025<br>HEARING TIME: 9:00 A.M. |

Defendant, Mathew Bowyer, by and through his attorney of record, Diane C. Bass, hereby submits this position regarding sentencing factors. Mr. Bowyer is respectfully requesting that the court impose a sentence of credit for time served to be followed by a period of supervision with conditions of home confinement and community service as sufficient, but not greater than necessary to satisfy the purposes of sentencing, given all the factors in this case.

Dated: August 15, 2025                                  Respectfully  submitted,


                                                         Diane C. Bass /s/_____
                                                         Attorney for Defendant
                                                         Mathew Bowyer

DEFENDANT'S POSITION RE: SENTENCING FACTORS; EXHIBITSSENTENCING DATE: AUGUST 15, 2025HEARING TIME: 9:00 A.M. - 1

## I.    INTRODUCTION

We should not measure justice by the number of calendar pages that turn. Instead, we should look at how hard a person works to reconcile with society, make amends, and prepare to live as a law-abiding citizen.

Mr. Bowyer exemplifies this sentiment.  He accepted responsibility for his crimes and began to cooperate with the government almost immediately after the agents executed the search warrant at his home.  He provided significant information regarding two very important cases as well as one other.

He has paid restitution in the amount of $1,613,280.00, in full.

He has exhibited extraordinary post offense rehabilitation.

He has fully accepted responsibility for his actions.  He acknowledges, to the world, that he engaged in criminal conduct and he is actively working to build a new life for himself and his family.

Mr. Bowyer has built a social media following where he talks about his crimes and about accepting responsibility for his actions. He has inspired and encouraged complete strangers in the process.

Mr. Bowyer is a gambling addict.  He lost millions of dollars gambling at casinos. This addiction drove him to what ultimately became his downfall, his illegal bookmaking business.

Mr. Bowyer has faced his demons. He has looked deep within to face the trauma that led to his addiction. He has been attending and participating in therapy. He has been attending gamblers anonymous meetings. He has also been helping others who are plagued by this addiction in ways he never expected.

DEFENDANT'S POSITION RE: SENTENCING FACTORS; EXHIBITSSENTENCING DATE: AUGUST 15, 2025HEARING TIME: 9:00 A.M. - 2

He has done 100 hours of community service through a non-profit called "Earning Freedom" which plays a pivotal role in providing more than 1 million individuals within correctional agencies, with the tools, skills and inspiration they need to become law-abiding, contributing members of society. This work is integral to the First Step Act. Mr. Bowyer has the opportunity to continue to volunteer through this non-profit. (*See Letter Attached as Exhibit A*.)

He has spoken about his experiences at USC.

Mr. Bowyer has 5 children, the youngest of whom is 4 years old, the next of whom is 14. He is an extraordinary father to all 5 of his children. *(See Letters Attached as Exhibit B.)* Mr. Bowyer does not need to be taken away from his family for his conduct considering the substantial amount of cooperation he has provided to the government and the work he has done on himself and in the community since the search of his home.

Mr. Bowyer's father, who was a Vietnam Veteran, abused alcohol to the tune of 40 cans of beer a day. Mr. Bowyer's earliest memory of this was when Mr. Bowyer was 6 years old. His father died from a brain tumor and lung cancer. Mr. Bowyer was 28 years old. Mr. Bowyer also lost his brother, with whom he was extremely close, to a heart attack, only months after his wedding to his wife Nicole.

Mr. Bowyer has no criminal history.

Mr. Bowyer asked to advance his sentencing hearing rather than wait indefinitely for the government to complete their investigation in one of the cases he assisted with. He is ready to face the consequences of his actions so that he can get back to his family and begin a new life. He realizes that by advancing his hearing, he may have to serve time in prison while if he waited, there was a good chance he would not. He is still absolutely willing to do whatever the

DEFENDANT'S POSITION RE: SENTENCING FACTORS; EXHIBITSSENTENCING DATE: AUGUST 15, 2025HEARING TIME: 9:00 A.M. - 3

government asks of him regarding the ongoing investigation; however, he is willing to forgo that credit to move on from this chapter of his life.

Most striking, is the love and support Mr. Bowyer has continued to receive throughout this process.  He has the undying love of his family and so many friends who support him and are there for him with whatever he needs.  This is evident by the letters attached and the turnout the court will witness at his sentencing hearing.

The defense disagrees with probation's analysis of the applicable guidelines range as explained in the *PSR ¶ 43.* The total offense level should be 21 and the corresponding applicable guidelines range should be 37-46 months rather than 41-51 months.

Mr. Bowyer is respectfully asking the court to allow him to remain with his family and continue to serve his community in any way possible while sharing the message of redemption. He intends to share how he has taken this ordeal and turned it into an opportunity to start over and help change lives.

## II.    ARGUMENT

### A.  The Defense Disagrees with Probation's Analysis of the Applicable Guidelines Range as Explained in the PSR ¶ 43

Probation cites USSG §3D1.3(a), Application Note 6 to support the argument that the tax offense charged in Count 3 should not group with Counts 1 and 2.  The PSR states that certain offenses, such as tax offenses, are not to be grouped under subsection (d) because the offense level is based largely on the basis of the total amount of harm or loss.  There is nothing in Comment 6 that excludes tax offenses. Probation argues that Grouped Counts 1 and 2 involve different harm with different victims from 3.  This is not the case. The only actual victim in this case was the United States vis-à-vis the IRS.  No unique individual was harmed. All of Mr.

Bowyer's conduct was part and parcel of running an illegal bookmaking business and disguising the proceeds of that business. For this reason, the court should not apply the one level increase for the number of units assigned pursuant to § 3D1.4, and the total offense level should be 21 and the corresponding applicable guidelines range should be 37-46 months, not 41-51 months.

### B. Application of the Statutory Sentencing Factors

As this Court well knows, 18 U.S.C. § 3553(a), states that the Court must "impose a sentence sufficient, but not greater than necessary, to comply" with the purposes of sentencing. In undertaking its analysis, the Court considers the advisory sentencing range recommended by the Guidelines and any relevant Guideline policy statements, as well as the sentencing factors set forth below.

### 1. Restitution

Restitution has been paid IN FULL in this case. Mr. Bowyer has paid $1,613,280.00 to the IRS which is the total amount of restitution owed. As this court knows, it is extremely rare for a defendant to pay any restitution beyond minimum monthly payments through probation, never mind, to pay restitution in full *and* to pay it prior to sentencing.

The U.S. Government Accountability Office (GAO) released a report in February 2018 that analyzed the amount of restitution debt collected nationwide. It found that only 7% of restitution dollars had been collected prior to sentencing.

According to Congress.gov, prosecutors will likely never secure more than $1 out of every $10 owed, or 10%.

Therefore, Mr. Bowyer's payment of more than $1.6 million prior to sentencing is extraordinary.

As an aside, in the year 2022, the year for which Mr. Bowyer has pled guilty to filing a false tax return, he accepted responsibility for failing to report $4,030,938 on his tax return. Mr. Bowyer lost approximately $4,000,000 gambling in 2022. (DKT #9, page 31, line 9.) However, Internal Revenue Code Section 165(d) provides that, "losses from wagering transactions shall be allowed only to the extent of the gains from such transactions." As such, the law does not allow a taxpayer to report a net loss from gambling. In short, had Mr. Bowyer been able to deduct his gambling losses, he would have owed the IRS considerably less, if anything.

It should be noted that Mr. Bowyer has filed an accurate tax return for 2023 and filed an extension for 2024. He is currently on a payment plan with the IRS.

**2**. **The Nature and Circumstances of the Offense and The History and Characteristics of the Defendant**

Mr. Bowyer's letter to the court attached as *Exhibit "C"* as well as the other exhibits, truly capture the nature and circumstances of the offense and the history and characteristics of the defendant. Mr. Bowyer would ask the court to consider the contents of those documents and incorporate them herein by reference.

**i.** **Mr. Bowyer's Upbringing**

Mr. Bowyer's father was a Vietnam Veteran who suffered from PTSD. As a result, he drank approximately 40 cans of beer per day and chain-smoked cigarettes. Mr. Bowyer pled with his father to stop drinking for years. His father went to rehab six times. Mr. Bowyer started attending "family meetings" at rehab with his family once a week from the ages of 9 through 12. The family spent a "fortune" on rehab to no avail. His father never attended his wrestling, football or baseball games. *PSR ¶ 81-82.*

DEFENDANT'S POSITION RE: SENTENCING FACTORS; EXHIBITSSENTENCING DATE: AUGUST 15, 2025HEARING TIME: 9:00 A.M. - 6

When Mr. Bowyer was 12, his mother divorced his father. She worked three jobs and started a cake business. *PSR ¶ 83.* She was still unable to keep the family home. *PSR ¶ 84.* Mr. Bowyer reports that because his mother was busy working 4 jobs, although he always felt loved by his mother, he and his 3 brothers were left to "figure it out."

Wanting to help his mother out, Mr. Bowyer got jobs selling newspapers for The Orange County Register and selling subscriptions door to door. *PSR ¶ 84.* Any free time he had after school, he spent working. *PSR ¶ 86-87.*

### ii. Gambling Addiction

The DSM-5 defines Gambling Disorder as persistent and recurrent problematic gambling behavior leading to significant impairment or distress. It requires individuals to exhibit four or more of the following criteria within a 12-month period:

1. **Need to gamble with increasing amounts of money:** Feeling the need to gamble with larger sums to achieve the desired excitement.

2. **Restlessness or irritability when cutting down or stopping:** Experiencing unease or agitation when trying to reduce or quit gambling.

3. **Unsuccessful attempts to control or stop:** Repeated failed efforts to manage or quit gambling.

4. **Preoccupation with gambling:** Frequent thoughts about past gambling experiences, planning future gambling, or thinking about how to obtain money for gambling.

5. **Gambling when distressed:** Turning to gambling as a way to cope with negative emotions like feeling helpless, guilty, anxious, or depressed.

6. **Chasing losses:** Returning to gamble again after losing money, in an attempt to recoup losses.

7. **Lying to conceal involvement:** Deceiving others about the extent of one's gambling activity.

8. **Jeopardizing relationships or opportunities:** Risking or losing significant relationships, jobs, or educational or career opportunities due to gambling.

9. **Relying on others for financial relief:** Needing others to provide money to alleviate financial problems caused by gambling.

In addition to these criteria, the DSM-5 also specifies:

- The gambling behavior is not better explained by a manic episode.
- Severity can be specified as mild, moderate, or severe, based on the number of criteria met.
- Remission can be specified as early or sustained.

According to Pychiatry.org, only one in ten people with gambling disorder seek treatment.  Mr. Bowyer has been participating in psychological counseling *See letter attached as Exhibit D*. He has also attended gambler's anonymous meetings.  He is one in ten. [1]

Mr. Bowyer explains his gambling history:

"My introduction to gambling began at age 12, shortly after my parents divorced. Overnight, our home life changed. My mother worked three jobs to keep us in our house, but we eventually lost it. I felt a responsibility to contribute, taking jobs as a paperboy, selling subscriptions, working at a baseball card shop, Perry's Pizza, and later as a cashier at Chevron.

With little supervision, I started running small poker games at home. My grandparents occasionally took me to the Los Alamitos racetrack, and by 16, I was selling programs there. Those early experiences planted seeds that would grow into a serious addiction.

---

[1] It is worth mentioning that Mr. Bowyer has been banned from every casino worldwide. The chance of relapse or recidivism is reduced even further for that reason.

DEFENDANT'S POSITION RE: SENTENCING FACTORS; EXHIBITSSENTENCING DATE: AUGUST 15, 2025HEARING TIME: 9:00 A.M. - 8

In my late teens, I gambled more often, racetracks, sports, and anything that gave me that rush. I found myself needing to bet more money to feel the same excitement. Losses led to taking bets from friends and neighbors to cover my own, which kept me in the game.

By 21, trips to Las Vegas were routine. I chased losses, believing the next win was just ahead. Working in a high-pressure brokerage firm surrounded by other gamblers made it easy to book wagers at work, and gambling soon consumed my thoughts, planning bets, replaying past wins and losses, and finding ways to fund my play.

The death of my father sent me deeper into gambling as a way to escape grief and stress. Every attempt to stop was short-lived. I'd become restless and irritable when I wasn't gambling, always pulled back in by the hope of a turnaround.

Over time, my gambling and the business I was running became inseparable. What began as a way to cope and survive became a compulsive, destructive cycle I could not control. Early exposure, family hardship, and my own choices created the perfect storm for a life-altering addiction, one I now recognize and take full responsibility for."

*See also, PSR ¶¶ 85-87, 92-93 and 105-107.*

Mr. Bowyer's gambling meets all the criteria for the definition of a severe "gambling disorder" as set forth in the DSM 5.   It is obviously the triggering factor for his conduct.

### iii. Mr. Bowyer's Family

Mr. Bowyer's father died from a brain tumor and lung cancer at the age of 56 when Mr. Bowyer was 28 years old.  *PSR ¶ 78.* Mr. Bowyer also lost his brother Shawn, with whom he was extremely close, to a heart attack at the age of 47, only months after his wedding to his wife Nicole. *PSR ¶ 79.* He misses his brother every day.

Mr. Bowyer has a wife and five children to whom he is completely devoted and who love him dearly. He has a 4-year-old son to whom he is completely devoted. He is a great father and husband. *Letters from family are attached as Exhibit B.*

Mr. Bowyer continues to pay the mortgage at the home where his daughter Sage resides half time with her mother. Of special note is Mr. Bowyer's relationship with his ex wife's current husband. Mr. Bowyer has co-parented their three daughters and he maintains a great relationship with all three girls, his ex-wife and his ex wife's husband. *His letter is attached in Exhibit (E).*

Mr. Bowyer's 4 daughters are all wonderful, well-educated and successful in their own right. His oldest daughter, Lauren, is 30 years old. She graduated from high school with honors. She earned a degree from the Fashion Institute of Design & Merchandising (FIDM) in Los Angeles. She works in Visual merchandising & marketing and is thriving in a competitive fashion/retail environment. She is married to her high school sweetheart. She has been managing Type 1 diabetes since her youth, without allowing it to limit her. She is ambitious, disciplined and responsible.

His second oldest daughter, Haley, is 26 years old. She recently relocated to New York to advance her career. She runs day-to-day operations for a fire & safety equipment company owned by her mother and stepfather. She is consistently praised for her performance and reliability. She also lives with Type 1 diabetes and remains diligent with her health while excelling professionally.

His third daughter, Brooke, is 22 years old. She Graduated from the University of Oregon with a 3.8 GPA. She previously earned a partial academic scholarship at J. Serra High School maintaining a 4.0 GPA. She is currently working as a legal intern at a law firm while studying for the LSAT. She hopes to attend law school at UCLA or Boston College.

She is focused, studious, and service minded. She is currently living at home while preparing for the next academic stage.

Sage Bowyer is 14 years old. She attended St. Margaret's where she maintained a 4.0 GPA. She is now entering J Serra High School.  She is a competitive volleyball player who earned a starting spot on the Fresh/Soph team and was named MVP at a tournament this month. Sage splits her time 50/50 between her parents' homes. She is hardworking, disciplined, and thriving academically and athletically.

All of his daughters' successes are in no small part due to Mr. Bowyer's love, support and dedication to them.

*See also, PSR ¶¶ 95-97.*

### iv.  Love and Respect from his Community

As the court can see by the letters attached and will see by the attendance at his sentencing hearing, Mr. Bowyer is so loved by his friends and his family.  He has also gained the respect and appreciation of his online community. *Letters from friends are attached as Exhibit E. Letters from people he has impacted online are attached as Exhibit F.*

### v.  Giving Back and Plans for the Future

Mr. Bowyer plans to continue giving back by sharing his story of addiction in many different arenas.  He will continue to volunteer with Earning Freedom which is a resource for the Bureau of Prisons with respect to the First Step Act providing inspiration and education to inmates across the nation.  Most importantly, he will continue to be there for his family.  Mr. Bowyer has many irons in the fire. He has used his time on pretrial supervision to prepare for his and his families future so that he can provide for them without resorting to illegal conduct.

DEFENDANT'S POSITION RE: SENTENCING FACTORS; EXHIBITSSENTENCING DATE: AUGUST 15, 2025HEARING TIME: 9:00 A.M. - 11

**C. The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct**

Scott Sibella ("Sibella") In 2023, Sibella was charged with One Count of failing to file a suspicious activity report as President of MGM Grand Las Vegas. *Case 2:23-CR-656-DMG.* He pled guilty to failing to file suspicious activity reports with FinCen. According to the factual basis in Sibella's plea agreement, from August 2017 through February 2019, Sibella knew that Wayne Nix ("Nix") was engaged in illegal bookmaking, yet he continued to allow Nix to gamble at MGM Grand and other affiliate properties. He also authorized Nix to receive complimentary benefits at the casino including meals, room, board and golf trips. Sibella was sentenced to one year of probation and a fine of $9500.00.

**D. Other Factors**

The court shall also consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.

**The Seriousness of the Offense**

Sports gambling is legal in 38 states. 30 states have online sports betting. Sports betting sites can be used by residents of states where sports betting is not legal.

Mr. Bowyer did not solicit clients. All of his clients were referred to him by people he knew. Mr. Bowyer did not take money from people he knew could not afford the bets they placed. Most of his clients were professionals, including doctors and lawyers.

Mr. Bowyer did not collect on all his bets.  Case in point, Ippe Mitsuhara owed Mr. Bowyer $26,000,000 at the time his case was filed.  Mr. Bowyer never used force to collect debts. He would rather "let it go."  However, Mr. Bowyer paid all money owed to his clients.

**Just punishment**

Mr. Bowyer has paid restitution in full. He has ceased operations of his business. He has fully and publicly accepted responsibility for his actions.  He has participated in community service, sought counseling and has made a significant impact on others through his social media accounts and speaking engagements.  Mr. Bowyer should not be sent to prison for his actions.  It would serve no purpose and it would be a waste of resources.

**Deterrence**

The Sentencing Commission has found that "[t]here is no correlation between recidivism and guidelines' offense level… While surprising at first glance, this finding should be expected. The guidelines' offense level is not intended or designed to predict recidivism." U.S. Sent'g Comm'n, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, at 15 (2004) ["U.S. Sent'g Comm'n, Measuring Recidivism"]. See also Part IV.A.3, infra. And according to "the best available evidence, . . . prisons do not reduce recidivism more than noncustodial sanctions." Francis T. Cullen et al., Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science, 91 Prison J. 48S, 50S-51S (2011).

The empirical evidence is unanimous that there is no relationship between sentence length and general or specific deterrence, regardless of the type of crime. See Andrew von Hirsch et al., Criminal Deterrence and Sentence Severity: An Analysis of Recent Research (1999) (concluding that "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a

basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects"); Michael Tonry, Purposes and Functions of Sentencing, 34 Crime and Justice: A Review of Research 28- 29 (2006) ("[I]ncreases in severity of punishments do not yield significant (if any) marginal deterrent effects. . . . Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence."); David Weisburd et al., Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes, 33 Criminology 587 (1995) (finding no difference in deterrence for white collar offenders between probation and imprisonment); Donald P. Green & Daniel Winik, Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism among Drug Offenders, 48 Criminology 357 (2010) (study of over a thousand offenders whose sentences varied substantially in prison time and probation found that such variations "have no detectable effect on rates of re-arrest," and that "[t]hose assigned by chance to receive prison time and their counterparts who received no prison time were re-arrested at similar rates over a four-year time frame").

**To Protect the Public**

Since the onset of his case, Mr. Bowyer has been an asset to the public inspiring others to accept responsibility for their actions, to face adversity and preventing others from making the same mistakes he did. He shares his experience with gambling addiction and the legal consequences of his actions.  He has been participating in therapy, addressing the roots of his conduct.  He has attended Gambler's Anonymous Meetings. He has an online presence where he has become an inspiration to others but most importantly, he is committed to being a good man for his family.  He is changing lives in a positive way as seen in the letters and comments he has received that are attached as exhibits.  The public does not need to be protected by Mr. Bowyer.

DEFENDANT'S POSITION RE: SENTENCING FACTORS; EXHIBITSSENTENCING DATE: AUGUST 15, 2025HEARING TIME: 9:00 A.M. - 14

Everyone in Mr. Bowyer's life knows about his case.  They will ALL be watching over him to be sure he doesn't re-offend.

### E. Mr. Bowyer has Cleary Demonstrated Extraordinary Post Offense Rehabilitation

The court can clearly see from Mr. Bowyer's letter to the court, the letters from his family and friends, the letters and comments from people he did not previously know, whom he has helped and inspired, the letter from his therapist, his attendance at Gambler's Anonymous, his payment of restitution in full and his efforts to create a completely new life for himself, that Mr. Bowyer is rehabilitated. He no longer gambles. He no longer engages in illegal conduct.  He is completely devoted to bettering himself, his community and his family.

### III.     CONCLUSION

Taking into consideration Mr. Bowyer's cooperation along with payment of restitution in full, his extraordinary acceptance of responsibility, his extraordinary rehabilitation and all the reasons set forth herein, it is respectfully requested that the court sentence Mr. Bowyer to credit for time served of one day to be followed by a term of supervision with a condition of home confinement and as many hours of community service as the court sees fit, as sufficient but not more than necessary to satisfy the purpose of sentencing.

Dated: August 15, 2025                         Respectfully submitted,


_____Diane C. Bass /s/_____
Diane C. Bass
Attorney for Defendant
Mathew Bowyer