BILAL A. ESSAYLI
Acting United States Attorney
CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division
KRISTEN A. WILLIAMS (Cal. Bar No. 263594)
Assistant United States Attorney
Chief, Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0526
    Facsimile: (213) 894-6269
    E-mail:   Kristen.Williams@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 8:24-CR-00080-JWH |
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION AND MOTION FOR DEPARTURE PURSUANT TO SECTION 5K1.1 |
| v. | |
| MATHEW R. BOWYER, | Hearing Date: August 29, 2025 |
| Defendant. | Hearing Time: 9:00AM |
| | Location:    Courtroom of the Hon. John W. Holcomb |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney Kristen A. Williams, hereby files its sentencing position and moves for a departure under U.S.S.G. § 5K1.1.

//
//
//
//

1        This position is based upon the attached memorandum of points

2    and authorities, the files and records in this case, and such further

3    evidence and argument as the Court may permit.

4    Dated: August 15, 2025          Respectfully submitted,

5                                    BILAL A. ESSAYLI
                                     Acting United States Attorney
6
7                                    CHRISTINA T. SHAY
                                     Assistant United States Attorney
                                     Chief, Criminal Division
8

9    _____

10   KRISTEN A. WILLIAMS
     Assistant United States Attorney
11
     Attorneys for Plaintiff
12   UNITED STATES OF AMERICA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

<u>DESCRIPTION</u>                                                                                                <u>PAGE</u>

TABLE OF AUTHORITIES.................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION...................................................1

II.   STATEMENT OF FACTS.............................................2

III.  THE PRESENTENCE REPORT AND GUIDELINE CALCULATION..............3

IV.   SECTION 5K1.1 MOTION FOR DEPARTURE............................7

V.    ARGUMENT......................................................9

      A.    A 15-Month Sentence Is Reasonable Given the Nature and
            Circumstances of the Offense and the History and
            Characteristics of Defendant...........................10

      B.    A 15-Month Sentence Reflects the Seriousness of the
            Offense and Affords Adequate Deterrence................11

      C.    A 15-Month Sentence Does Not Create Unwarranted
            Sentencing Disparities.................................13

      D.    The Remaining Section 3553(a) Factors Also Support the
            Requested Sentence.....................................14

VI.   CONCLUSION...................................................15

# **TABLE OF AUTHORITIES**

DESCRIPTION                                                                      PAGE

**FEDERAL CASES**

Gall v. United States,
    552 U.S. 38, 128 S. Ct. 586 (2007)...........................13

United States v. Astorri,
    923 F.2d 1052 (3d Cir. 1991).................................7

United States v. Bates,
    166 F. App'x 972, 2006 WL 372424 (9th Cir. 2006)..............6

United States v. Cantrell,
    433 F.3d 1269 (9th Cir. 2006)................................9

United States v. Knows His Gun,
    438 F.3d 913 (9th Cir. 2006).................................10

United States v. Morris,
    229 F.3d 1145, 2000 WL 1260162 (4th Cir. 2000)...............6

United States v. Nichols,
    464 F.3d 1117 (9th Cir. 2006)................................10

United States v. Smith,
    424 F.3d 992 (9th Cir. 2005).................................6

United States v. Treadwell,
    593 F.3d 990 (9th Cir. 2010).................................13

United States v. Vucko,
    473 F.3d 773 (7th Cir. 2007).............................6, 7

**STATUTES**

18 U.S.C. § 3553(a).......................................9, 10, 14

**GUIDELINES**

U.S.S.G. § 3D1.2.............................................5, 6

U.S.S.G. § 5B1.1..............................................14

U.S.S.G. § 5C1.1..............................................14

U.S.S.G. § 5K1.1...............................................8

ii

## TABLE OF AUTHORITIES (CONTINUED)

DESCRIPTION                                                                    PAGE

**ARTICLES**

Josh Kosman, "Mathew Bowyer, bookie for Shohei Ohtani's ex-
    interpreter, says half of pro athletes are betting on
    sports," <u>New York Post</u>, Feb. 3, 2025,
    https://nypost.com/2025/02/03/sports/matthew-bowyer-bookie-
    for-shohei-ohtanis-ex-interpreter-says-half-of-pro-
    athletes-are-betting-on-sports/..........................2-3, 12

Certificate of Compliance

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

Defendant MATHEW BOWYER is before this Court for sentencing on three separate crimes:  operating an illegal gambling business, money laundering, and filing a false tax return.  These crimes stemmed from defendant's years-long operation of a large-scale gambling business that took hundreds of millions of dollars in bets from hundreds of bettors on sporting events, made thousands of dollars daily, and used multiple accounts in his name and others' to receive and move that money around.  Defendant then failed to report on his tax return more than $4 million he received through his illegal business in just a single tax year.  Defendant has pled guilty to and accepted responsibility for his conduct and has submitted a restitution payment for his tax losses as obliged to per his plea agreement.

The government agrees with the Presentence Report's ("PSR") calculation of a total offense level of 22 and an applicable Guidelines range of 41-51 months.  In light of defendant's substantial assistance to the government, the government here moves for an eight-level departure pursuant to Section 5K1.1, which brings defendant's total offense level to 14, with an applicable Guidelines range of 15-21 months.  A low-end custodial sentence of 15 months is appropriate here, balancing the seriousness and multi-faceted nature of his conduct and need for specific and general deterrence, with defendant's personal and mitigating circumstances, and having already accounted for his acceptance of responsibility, lack of criminal history, and assistance to the government.  Defendant should also be ordered to pay restitution of $1,613,280 (creating the restitution order against which his pre-payment can be applied) and a special

assessment of $300.[1]  For the same reasons that support the government's recommended sentence, the time-served sentence requested by defendant (Def. Sentencing Position, Dkt. 52), which would effectively amount to a downward variance of at least six levels, is not reasonable.

## II.  STATEMENT OF FACTS

Because the factual background is detailed at length in the plea agreement's factual basis (Plea Agmt., Att. A, Dkt. 9) and PSR (PSR ¶¶ 16-33), it is only briefly summarized here.

Defendant ran a large sports gambling business that placed and accepted bets on sporting events for its clients, and employed agents and sub-agents, including casino hosts, who referred and recruited clients, demanded and collected on bettors' losses and distributed winnings, and were paid a portion of the losses bettors incurred and paid.  The business was extensive, running for at least five years, with gross revenues typically well over $2,000 a day, and handling bets for more than 700 bettors.

One of defendant's clients was Ippei Mizuhara, translator and de facto manager for a professional baseball player.  Mizuhara placed at least 19,000 bets with defendant totaling hundreds of millions, and defendant regularly increased Mizuhara's betting limits even though defendant has stated that he understood Mizuhara "had a massive gambling addiction problem."  Josh Kosman, "Mathew Bowyer, bookie for Shohei Ohtani's ex-interpreter, says half of pro athletes are betting

---

[1] The Court previously entered a Preliminary Order of Forfeiture as to $257,923 in currency and $14,830 in casino chips seized from defendant's residence.  (Dkt. 37.)  That Preliminary Order provided that it would become final as to defendant at sentencing and included in his judgment (Order at 4); the government hereby requests that the Court order it so at the sentencing hearing.

on sports," <u>New York Post</u>, Feb. 3, 2025,

https://nypost.com/2025/02/03/sports/matthew-bowyer-bookie-for-

shohei-ohtanis-ex-interpreter-says-half-of-pro-athletes-are-betting-

on-sports/.

    Bowyer kept numerous bank accounts in his name (and controlled accounts in others' names) to receive the illicit proceeds of the gambling business and then transfer or use those funds for his own personal benefit and that of his associates.

    Finally, defendant significantly underreported his income in 2022 ($607,000 vs. $4.03 million), causing tax losses of approximately $1.6 million.

## III. THE PRESENTENCE REPORT AND GUIDELINE CALCULATION

    In the PSR, the Probation Officer calculated a total offense level of 22 and a Criminal History Category of I.  The Probation Officer's total offense level calculation is as follows:

//
//
//
//
//
//
//
//
//
//
//
//
//

| | | |
|---|---|---|
| Group One (Counts One and Two -- Operating Illegal Gambling Business and Money Laundering): | | |
| Base Offense Level: | 12 | [U.S.S.G. §§ 2S1.1(a)(1); 2E3.1(a)(2)] |
| Convicted Under Section 1957: | +1 | [U.S.S.G. § 2S1.1(b)(2)(A)] |
| Aggravated Role: | +4 | [U.S.S.G. § 3B1.1(a)] |
| Group Two (Count Three – Filing False Tax Return): | | |
| Base Offense Level: | 22 | [U.S.S.G. §§ 2T1.1(a)(1); 2T4.1(I)] |
| Unreported Income from Criminal Activity | +2 | [U.S.S.G. § 2T1.1(b)(1)] |
| Multiple Groups | +1 | [U.S.S.G. § 3D1.4] |
| Acceptance of Responsibility: | −3 | [U.S.S.G. § 3E1.1] |
| Total Offense Level: | 22 | |

(PSR ¶¶ 37-68.)  Based on defendant's lack of any qualifying criminal history, the Probation Officer also determined in the PSR that defendant has zero criminal history points and thus falls within Criminal History Category I.  (PSR ¶ 73.)  The Probation Officer recognized that a total offense level of 22 and a Criminal History Category of I result in an advisory Guidelines range of 41-51 months. (PSR ¶ 128.)

The government agrees with the PSR's calculations.

In addition to the non-exhaustive recitation of the agreed-upon Guidelines in the parties' plea agreement (Plea Agmt. ¶ 24), the PSR correctly applies an aggravated role enhancement, given that defendant ran the gambling business, which involved well more than five people and was undoubtedly extensive.  (PSR ¶¶ 48-51.)

4

1    The PSR also correctly applied a multiple count adjustment here.

2    Pursuant to U.S.S.G. Section 3D1.2, "[a]ll counts involving

3    substantially the same harm shall be grouped together into a single

4    Group," and those counts involve "substantially the same harm" when,

5    most relevant here under subsection (d), "the offense level is

6    determined largely on the basis of the total amount of harm or loss."

7    See also U.S.S.G. § 3D1.2, App. Note 6 (providing that most property

8    crimes and other crimes "where the guidelines are based primarily on

9    quantity or contemplate continuing behavior are to be grouped

10   together").  As noted above, in this case, the Guideline calculation

11   for Count Group 1 (comprised of the gambling and money laundering

12   offenses) is largely based on nature of the underlying business (not

13   its associated losses or amounts of bets, for example), while the

14   calculation for Count Group 2 (the tax offense) is largely based on

15   the associated tax losses.  Thus, unlike two fraud charges or two tax

16   charges where the harm would similarly be measured in the amount of

17   loss, here, the charges in Count Group 1 and Count Group 2 do not

18   both use associated losses to calculate their respective offense

19   levels, and do not group under the plain language of the Guideline.

20   The PSR also correctly recognized that Count Group 1 and Count

21   Group 2 involve different harms and different victims.  (PSR ¶ 43.)

22   The tax offense clearly harmed the IRS by withholding taxes owed on

23   over $4 million in income in just one year.  But, as defendant also

24   recognizes, his gambling operation caused different societal harms,

25   "[taking] advantage of compulsive gamblers" and "hurting individual

26   gamblers and their families who suffered financial and emotional

27   consequences."  Def. Sentencing Position, Ex. C, Dkt. 52-3.  The

28   Ninth Circuit has affirmed on de novo review a sentencing court's

determination that fraud and money laundering counts did not group with tax counts because they involved different victims and harms, with the tax counts victimizing the federal government (the IRS) and the fraud and money laundering counts victimizing the investors whose money defendant stole.  See United States v. Bates, 166 F. App'x. 972, 973, 2006 WL 372424 (9th Cir. 2006) (unpublished); United States v. Smith, 424 F.3d 992, 1015 (9th Cir. 2005) (same).  Other circuits have agreed.  See, e.g., United States v. Morris, 229 F.3d 1145, 2000 WL 1260162 (4th Cir. 2000) (unpublished) (rejecting grouping of tax evasion and money laundering offenses; "The victims, harms, and conduct for the offenses of conviction were different.  As a result, the offenses were not closely related and the grouping rule found in U.S.S.G. § 3D1.2(c) did not apply.").  Thus, even in cases where the guidelines for both the tax and fraud are based largely on the amount of losses, courts have rejected grouping.  This case is an even easier one against grouping, since the Guideline calculation related to defendant's gambling business and laundering is not based on losses or the amount of bets placed.

Nor would the fact that defendant failed to report his substantial gambling income on his taxes justify grouping.  The Seventh Circuit considered a similar question in United States v. Vucko, 473 F.3d 773 (7th Cir. 2007), concerning whether the fraud and tax counts should group because the tax guideline accounted for unreported income from unlawful sources (namely, the wire fraud).  In rejecting that argument and affirming a district court's refusal to group wire and tax fraud offenses, the Court noted that

> To suggest that any criminal offense that produces income is subsumed into the tax guideline calculation with a two-level enhancement is to create a category without limits. . .

> . . There is a distinction between saying that any underlying criminal act increases the offense level and that a specific underlying act increases the offense level. Furthermore, the Commentary indicates that the enhancement is not supposed to account for the underlying crime, but rather the presumption that officials will not be able to calculate the full extent of the ill-gotten gains that defendant failed to report.

Id. at 779; cf. United States v. Astorri, 923 F.2d 1052, 1056-57 (3d Cir. 1991) ("Thus, the Commission included this specific offense characteristic to deter tax evasion. To include this specific offense as 'conduct' in the fraud count negates its separate inclusion within the tax evasion guideline.").

Finally, not including the multiple count adjustment would leave this defendant to be sentenced under the same Guidelines that would apply to a defendant convicted solely of a tax offense, effectively ignoring his large-scale gambling and money laundering operation entirely. That would be an unjust result. Such grouping would "seriously undercut the concept of 'incremental punishment' that underlies both the grouping rules and the Guidelines as a whole. The effect of grouping [defendant's] offenses would be to eliminate the marginal punishment for her second offense . . . . There would be no increase at all for her additional crime . . . ." Vucko, 473 F.3d at 781 (affirming district court's refusal to group wire and tax fraud offense).

With the properly applied multiple count adjustment, the PSR is correct that the total offense level is 22, corresponding to an applicable Guidelines range of 41-51 months.

## IV.    SECTION 5K1.1 MOTION FOR DEPARTURE

The government hereby moves for an eight-level departure under Guidelines Section 5K1.1 based on defendant's provision of

7

1   substantial assistance to the government, which will bring his total

2   offense level down to 14.  Under Section 5K1.1, the government may

3   make a motion for a departure from the Guidelines range when "the

4   defendant has provided substantial assistance in the investigation or

5   prosecution of another person who has committed an

6   offense."  U.S.S.G. § 5K1.1.  In determining the appropriate

7   reduction, the Court may consider (1) the significance and usefulness

8   of the defendant's assistance; (2) the truthfulness, completeness,

9   and reliability of any information or testimony provided by

10   defendant; (3) the nature and extent of the assistance; (4) any risks

11   defendant incurred in providing the assistance; and (5) the

12   timeliness of the assistance.  Id.

13       Here, Bowyer provided truthful information through proffer

14   statements and was willing to testify at trial regarding that

15   information, which led to the charges and conviction of two

16   individuals against whom the government already had sufficient

17   evidence to indict on the same or related charges.  In particular,

18   defendant assisted with the government's bank and tax fraud case

19   against one of his clients, Ippei Mizuhara, who was subsequently

20   charged and convicted in United States v. Mizuhara, CR 24-00054-JWH.

21   Defendant's counsel affirmatively notified the government about

22   impending press and provided information regarding Mizuhara in a

23   voluntary interview in January 2024, and then again in an April 2024

24   interview.  Mizuhara was charged by information with bank fraud and

25   subscribing to a false tax return shortly thereafter in May 2024, and

26   pleaded guilty, likely in part because of the information provided by

27   defendant.

28

Defendant also assisted the government with its case against Damien Leforbes, the head of a large sports gambling business. Defendant provided information in a voluntary interview in November 2023, which contributed to the government's ability to interpret recovered text messages and execute a search warrant on Leforbes in December 2023.  Defendant provided additional information about Leforbes in a second interview in January 2024.  These interviews and defendant's willingness to cooperate contributed to a pre-indictment plea with Leforbes in which he pled to operating an unlawful gambling business and money laundering.  See United States v. Leforbes, CR 24-00515-MRA.

Defendant's assistance was significant, timely, and credible. Because the assistance helped secure two different convictions, including a high-profile one, an eight-level departure under Section 5K1.1 is warranted here.[2]

## V.   ARGUMENT

Based on a total offense level of 14 and a Criminal History Category of I, the applicable Guidelines sentencing range in this case is 15-21 months of imprisonment.  While not definitive, the Guidelines range provides the starting point for finding a reasonable sentence and must then be considered with the factors set forth in 18 U.S.C. § 3553(a).  See United States v. Cantrell, 433 F.3d 1269, 1279 (9th Cir. 2006).  "To comply with the requirements of Booker, the

---

[2] Defendant also provided other information to the government in an attempt to cooperate, but, because that information has not substantially assisted the government as of this filing, no credit has been awarded for it, as defendant knew would be the case when he elected to advance this sentencing and "forgo that credit."  (Def. Sentencing Position at 4.)  Any future assistance would, if appropriate, be addressed by a motion pursuant to Federal Rule of Criminal Procedure 35(b).

district court must have sufficiently considered the Guidelines as well as the other factors listed in § 3553(a).  This requirement does not necessitate a specific articulation of each factor separately, but rather a showing that the district court considered the statutorily-designated factors in imposing a sentence." United States v. Nichols, 464 F.3d 1117, 1125 (9th Cir. 2006) (quoting United States v. Knows His Gun, 438 F.3d 913, 918 (9th Cir. 2006)).

The factors set forth in 18 U.S.C. § 3553(a) are satisfied by a 15-month sentence and such a sentence is "sufficient, but not greater than necessary" to comply with the purposes enumerated in 18 U.S.C. § 3553(a)(2), as discussed below.

**A.    A 15-Month Sentence Is Reasonable Given the Nature and Circumstances of the Offense and the History and Characteristics of Defendant**

Defendant's crimes were not a single indiscretion, but instead a multi-year operation that raked in millions of dollars for defendant and his associates to gamble and live an "extravagant lifestyle" (PSR ¶ 106), often through the exploitation of people defendant recognized were addicted and extending themselves beyond their means, money that was routed through multiple accounts and ultimately not reported to the government on defendant's taxes.  These are serious crimes.  And, while defendant demurrers that gambling is legal in some states (Def. Sentencing Position at 12), he chose to run his business where it was not and then engage in conduct designed to conceal what he was doing.

He also knowingly and willfully submitted a false tax return that significantly underreported his income, which is a serious crime in and of itself.  Based on his outstanding liabilities "separate from this case" of more than $5.4 million with the IRS and California

Franchise Tax Board (PSR ¶¶ 120, 118), this was not his first issue with paying the taxes he owes.

Unlike many this Court sees, defendant appears to have had a stable middle-class upbringing and to enjoy a strong social network, including at the same time as the criminal conduct here.  (PSR ¶ 80; Def. Sentencing Position, Ex. E.)  He was also able to excel early on in commodities trading (PSR ¶¶ 89-91), suggesting his potential to earn a comfortable, legitimate income, rather than resort to crime.

In mitigation, defendant has a long history with addiction, both living with his father's alcohol addiction, and then dealing with his own urges to gamble.  (PSR ¶¶ 81-82, 85, 87-88.)  It is to his credit that he has recognized this and is working to help others avoid similar circumstances.  Nonetheless, it should also be noted that many who struggle with a gambling addiction find themselves destitute and desperate; they are not themselves running large gambling businesses and living an extravagant lifestyle.

It is also to defendant's credit that he has paid his restitution.  However, that was a condition of his plea agreement and, despite his high net worth, it appears that payment may have been made through a personal loan from a friend.  (Plea Agmt. ¶ 4; PSR ¶ 121.)

**B.    A 15-Month Sentence Reflects the Seriousness of the Offense and Affords Adequate Deterrence**

As noted, all three of defendant's crimes of conviction are serious ones.

There is also a need for both specific and general deterrence here.  While defendant points out that he can no longer enter casinos (Def. Sentencing Position at 8 & n.1), his own backstory shows that

casinos are not the only places that someone who wants to gamble can do so (see PSR ¶¶ 85-88; Def. Sentencing Position at 8-9).  Also, while the charges here reflect that he was running his gambling business for at least five years, the PSR makes clear he has been engaged in bookmaking for nearly all of his adult life.  (PSR ¶ 93.)  In a recent interview he acknowledged that "[i]t's very hard to stay clean when you go from having dopamine rushes and betting $1 million on a football game to having zero income. . . .  The first thing you want to do is gamble."  Josh Kosman, "Mathew Bowyer, bookie for Shohei Ohtani's ex-interpreter, says half of pro athletes are betting on sports," New York Post, Feb. 3, 2025, https://nypost.com/2025/02/03/sports/matthew-bowyer-bookie-for-shohei-ohtanis-ex-interpreter-says-half-of-pro-athletes-are-betting-on-sports/.  Thus, the temptation for defendant will be significant and, while it is good that he has a strong social support network around him, many of those appear to have been around him during the conduct in this case (see, e.g., PSR ¶ 97), suggesting they were not able to correct his course then.  Thus, the Court must remain concerned about specific deterrence here.

More broadly, defendant's sentence should also deter others from engaging in similar criminal conduct.  Defendant holds himself out as an example to others including on social media and apparently intends to write a book about his experiences.  That makes him unlike your average defendant whose sentence might be known to relatively few and makes it all the more important that others perceive not just the glamorous lifestyle that his prior gambling business afforded, but also the consequences one can face for engaging in criminal conduct like we see here.  There is also a strong need for the public to see

1    that filing false tax returns is not acceptable, no matter who you

2    are.

3        C.    **A 15-Month Sentence Does Not Create Unwarranted Sentencing**

4              **Disparities**

5        Pursuant to 18 U.S.C. § 3553(a)(6), the Court is required to

6    minimize sentencing disparity among similarly situated defendants.

7    One way of doing so is to correctly calculate the Guidelines range.

8    See United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010),

9    overruled on other grounds by United States v. Miller, 953 F.3d 1095

10   (9th Cir. 2020) ("Because the Guidelines range was correctly

11   calculated, the district court was entitled to rely on the Guidelines

12   range in determining that there was no 'unwarranted disparity' . . .

13   ."); see also Gall v. United States, 552 U.S. 38, 54, 128 S. Ct. 586,

14   599 (2007) ("[A]voidance of unwarranted disparities was clearly

15   considered by the Sentencing Commission when setting the Sentencing

16   Guidelines ranges.  Since the District Judge correctly calculated and

17   carefully reviewed the Guidelines range, he necessarily gave

18   significant weight and consideration to the need to avoid unwarranted

19   disparities.").  The government has recommended a within-Guidelines

20   sentence here, minimizing any potential disparities with similarly

21   situated defendants.

22       Defendant points to the probationary sentence received by Scott

23   Sibella, former president of MGM Las Vegas, in United States v.

24   Sibella, CR 23-00656-DMG, to claim it would be disparate for him to

25   receive a more serious sentence here.  (Def. Sentencing Position at

26   12.)  However, Sibella was charged with one count of failing to file

27   a suspicious activity report, not operating an illegal gambling

28   business, money laundering, or filing a false tax return omitting

13

millions in income, like defendant was.  Simply put, Sibella is not similarly situated and thus any difference in their sentences does not amount to an unwarranted disparity.

Additionally, Mizuhara was sentenced to 57 months in custody for committing bank and tax fraud related to his attempts to get the money he used to bet with defendant.  That is well more than defendant is facing here, even though Mizuhara was just one of many clients in defendant's gambling business, someone for whom defendant repeatedly increased the betting limit despite knowing of Mizuhara's gambling problem.

**D.    The Remaining Section 3553(a) Factors Also Support the Requested Sentence**

Section 3553(a)(3) requires the Court to consider the kinds of sentences available.  Defendant's crime falls within Zone D of the Sentencing Table, and non-custodial sentences are discouraged for such offenses.  See U.S.S.G. § 5C1.1(f); U.S.S.G. § 5B1.1 cmt. n.2. Furthermore, the public interest in satisfying the other Section 3553(a) factors of obtaining a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, and protects the public from further crimes of defendant outweighs any interest in having defendant avoid time in custody.

Sections 3553(a)(4) and (5) require the Court to treat the Guidelines as merely "advisory" but to take them into consideration nonetheless, as the government has done herein and as the Probation Officer did in the PSR.

Finally, under 18 U.S.C. § 3553(a)(7), the Court is required to consider the need to provide restitution to the victims of the

14

offense.  The government agrees with the Probation Office that that the Court should order defendant to pay restitution of $1,613,280 related to defendant's tax losses, which order will permit the payment he has already made to be credited to the victim.

**VI.  CONCLUSION**

    For the foregoing reasons, the government submits that the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a) support the imposition of a sentence that includes a 15-month term of imprisonment, a three-year period of supervised release and conditions, payment of a $300 special assessment, and payment of restitution in the amount of $1,613,280.

Certificate of Compliance

1        The undersigned, counsel of record for the United States of

2    America, certifies that this brief contains 3,606 words, which

3    complies with the word limit of L.R. 11-6.1.

4

5    Dated: August 15, 2025              Respectfully submitted,

6                                        BILAL A. ESSAYLI
                                         Acting United States Attorney
7
                                         CHRISTINA T. SHAY
8                                        Assistant United States Attorney
                                         Chief, Criminal Division
9

10                                       _____

11                                       KRISTEN A. WILLIAMS
                                         Assistant United States Attorney
12
                                         Attorneys for Plaintiff
13                                       UNITED STATES OF AMERICA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28